# SUMMONS

RECEIVED 2/6/20 @ 12:25pm

E-FILED | 2/3/2020 1:36 PM
CC-18-2020-C-17
Jackson County Circuit Clerk
Bruce DeWees

## IN THE CIRCUIT OF JACKSON WEST VIRGINIA
### Shawn Abel v. Niche Polymer LLC

Service Type:   Sheriff - Including Copy Fee

NOTICE TO:   Niche Polymer LLC, 880 south Washington Street, Ravenswood, WV 26164
THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY:

Robert Lorea, 108 1/2 Capitol St Ste 200, Charleston, WV 25301

THE ANSWER MUST BE MAILED WITHIN 20 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

SERVICE:

2/3/2020 1:36:20 PM
Date

/s/ Bruce DeWees
Clerk

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

☐ Not Found in Bailiwick

_____
Date

_____
Server's Signature

EXHIBIT A

# COVER SHEET

E-FILED | 2/3/2020 1:36 PM
CC-18-2020-C-17
Jackson County Circuit Clerk
Bruce DeWees

## GENERAL INFORMATION

IN THE CIRCUIT COURT OF JACKSON COUNTY WEST VIRGINIA
**Shawn Abel v. Niche Polymer LLC**

**First Plaintiff:** ☐ Business  ☑ Individual  ☐ Government  ☐ Other

**First Defendant:** ☑ Business  ☐ Individual  ☐ Government  ☐ Other

**Judge:** Lora Dyer

## COMPLAINT INFORMATION

**Case Type:** Civil    **Complaint Type:** Tort

**Origin:** ☑ Initial Filing   ☐ Appeal from Municipal Court   ☐ Appeal from Magistrate Court

**Jury Trial Requested:** ☑ Yes ☐ No    **Case will be ready for trial by:** _____

**Mediation Requested:** ☑ Yes ☐ No

**Substantial Hardship Requested:** ☐ Yes ☑ No

☐ Do you or any of your clients or witnesses in this case require special accommodations due to a disability?

  ☐ Wheelchair accessible hearing room and other facilities
  ☐ Interpreter or other auxiliary aid for the hearing impaired
  ☐ Reader or other auxiliary aid for the visually impaired
  ☐ Spokesperson or other auxiliary aid for the speech impaired
  ☐ Other: _____

☐ I am proceeding without an attorney
☑ I have an attorney: Robert Lorea, 108 1/2 Capitol St Ste 200, Charleston, WV 25301

EXHIBIT A

## SERVED PARTIES

**Name:** Niche Polymer LLC
**Address:** 880 south Washington Street, Ravenswood WV 26164
**Days to Answer:** 20      **Type of Service:** Sheriff - Including Copy Fee

EXHIBIT A

E-FILED | 2/3/2020 1:36 PM
CC-18-2020-C-17
Jackson County Circuit Clerk
Bruce DeWees

IN THE CIRCUIT COURT OF JACKSON COUNTY, WEST VIRGINIA

SHAWN ABEL

    Plaintiff,

v.                                                           Civil Action No. _____

                                                                   Judge: _____

NICHE POLYMER, LLC;

    Defendant.

## COMPLAINT

This is an action by Plaintiff for damages arising out of Defendants' unlawful retaliatory discharge of Plaintiff, which was motivated by a contravention of substantial public policies, as set forth in *Harless v. First National Bank in Fairmont*, 162 W.Va. 116, 246 S.E.2d 270 (1978).

## PARTIES AND JURISDICTION

1. At all relevant times, Plaintiff Shawn Abel ("Mr. Abel"), was a citizen of West Virginia.

2. At all relevant times, Defendant Niche Polymer, LLC ("Niche") was a West Virginia Limited Liability Company, with its principal place of business in Jackson County, West Virginia.

## VENUE

3. Venue is properly vested in this Court because the cause of action giving rise to this Complaint occurred in Jackson County, West Virginia.

## FACTS

EXHIBIT A

4. Mr. Abel was employed at Niche from July 21, 2011 until February 22, 2018, when he was unlawfully terminated for making various safety related complaints. Mr. Abel held the position Junior Process Engineer/Supervisor at the time of his termination.

5. During his employment, Mr. Abel performed his duties in a satisfactory manner and met the reasonable expectations of his employer. Among Mr. Abel's job responsibilities were training new employees, and having responsibility for extruder "Line 10."

6. Once Mr. Abel was promoted to Junior Process Engineer/Supervisor, he began to make complaints to the Defendant regarding the safety of various aspects of the workplace. Mr. Abel voiced his concerns to members of management, including Jim Locary, Patrick Haynes, Jeremy Colman, and various shift maintenance personnel.

7. Among the safety related complaints made by Mr. Abel were the following:

   a. a lack of a necessary guards on cutting machinery;

   b. machinery that was modified to run without a limit switch installed;

   c. water leaking on to floors and causing slip and fall hazards;

   d. high voltage power cords passing through wet areas;

   e. The need for barricades to protect the plant's high voltage power center and/or the insufficiency of barricades that were ultimately installed around the power center;

   f. damaged and unstable wheels on fork trucks;

   g. defective maintenance of fork trucks;

   h. overflowing water tanks;

2

EXHIBIT A

    i.    exposed live electrical lines; and

    j.    insufficient safety training.

8. Additionally, Mr. Abel would have to decline starting up his extruder line until certain safety issues were remedied. On more than one occasion, Mr. Abel was ordered by management to fire up the line anyway despite the existence of dangerous safety issues.

9. Mr. Abel's safety related complaints were made out of concern for the safety and welfare of himself, and others in the workplace that were put at risk by these dangers.

10. Mr. Abel communicated his safety related complaints directly to members of Niche management.

11. Mr. Abel began to suffer increased animosity in the workplace with each safety related complaint that he made. In February 2018, Niche hired an individual named Robert Cobb as an additional shift supervisor. Mr. Cobb immediately made known to Mr. Abel that he was hired to replace Mr. Abel as shift supervisor on Mr. Abel's production line.

12. The workplace retaliation came to a head on or about February 21, 2018. Mr. Abel had been suffering from an illness. He attempted to work, but found that he could not, and so he made plans to leave work early at noon. Before Mr. Abel left his office, Niche accused Mr. Abel of being under the influence of drugs. Mr. Abel was ordered to undergo a drug test at River Valley Health and Wellness Center.

13. Niche did not provide him with transportation. This was a departure from Niche's ordinary course of business, wherein Niche would ordinarily drive the employee to the testing facility in a company vehicle. Mr. Abel was instead required to find his own transportation to the testing

facility. Mr. Abel did not drive to work that day. Consequently, Mr. Abel was instead required to contact his father, inform him that he had been ordered to take a drug test, and ask him to drive him to River Valley for that purpose.

14. Mr. Abel traveled to River Valley for purposes of taking a drug test as ordered by his employer, Niche. Mr. Abel cooperated fully and submitted to the drug test that Niche demanded. Mr. able was told that the results of this test were inconclusive. Mr. Able was unable to take a second drug test before the testing facility closed.

15. Upon being informed that the test results were inconclusive or otherwise unacceptable to his employer, Mr. Abel contacted Sonny Nyack, the Niche employee that he was supposed to report to, and informed him of what had occurred. Mr. Nyack informed Mr. Abel to take another test the following day.

16. Consistent with his directions from Mr. Nyack, Mr. Abel took a second drug test the following day on February 22, 2018 and returned to work. Mr. Abel provided Niche with the test results showing that he had "passed." At this point, Niche told Mr. Abel that his employment was being terminated because he did not return to Niche with a passing result within on hour of being ordered to do so.

17. Niche's orders concerning the drug test were merely pretext. In reality, Mr. Abel's employment was terminated in retaliation for making the numerous safety related complaints.

## COUNT ONE – *HARLESS* CLAIM

18. Mr. Abel realleges and incorporates each of the preceding allegations of the Complaint the same as if each had be restated verbatim herein.

19. Defendant terminated Mr. Abel's employment in whole or in part, in retaliation for making complaints regarding the health, safety and welfare of himself and other employees of Niche.

20. Defendants' termination of Mr. Abel's employment was motivated by a contravention of one or more substantial public policies, as articulated in *Harless v. First National Bank in Fairmont*, 162 W. Va. 116, 246 S.E.2d 270 (1978).

21. West Virginia Code Chapter 21, Article 3 titled "Safety and Welfare of Employees" establishes the public policy of ensuring West Virginia employees have a safe work environment.

22. *W. Va. Code* §21-3-1 states the following:

> Every employer shall furnish employment which shall be reasonably safe for the employees therein engaged and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render employment and the place of employment safe, and shall do every other thing reasonably necessary to protect the life, *health*, safety, and welfare of such employees ... (emphasis added).

23. Moreover, Chapter 15 of the *Occupational Safety and Health Act* ("OSHA"). 29 U.S.C. § 651, *et seq.* and its related federal regulations govern occupational health and safety in the private sector.

24. In 29 U.S.C. § 651, Congress declared the policy of OSHA as follows:

> (b) The Congress declares it to be the purpose and policy, through the exercise of its powers to regulate commerce among the several States and with foreign nations and to provide for the general welfare, to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources ...

25. Defendant's termination of Mr. Abel's employment was motivated in whole or in part by the safety complaints he made, in contravention of one or more substantial public policies designed to protect the health and welfare of employees.

5

EXHIBIT A

26. Defendant's retaliatory and adverse employment actions against Mr. Abel chilled the work environment against Mr. Abel and other employees from exercising their rights to safe and healthful working conditions.

27. Defendant's actions and/or inactions were willful, wanton, and/or intentional and were undertaken with reckless disregard and indifference to the rights of Mr. Abel.

28. As a direct and proximate result of Defendant's action and/or inactions, Mr. Abel has suffered and will continue to suffer economic damages, including past, present, and future lost wages and benefits, in an amount to be determined by a jury.

29. As a direct and proximate result of Defendant's actions and/or inactions, Mr. Abel has suffered and will continue to suffer emotional damages, including humiliation, mental pain and suffering, emotional distress, and embarrassment, in an amount to be determined by a jury.

30. As a direct and proximate result of Defendant's willful, wanton, and intentional actions and/or inactions, Mr. Abel is entitled to punitive damages in an amount to be determined by a jury and the costs of litigation, including attorney's fees and costs.

31. As a direct and proximate result of Defendant's actions and/or inactions, Mr. Abel has suffered and will continue to suffer damages and is entitled to all other legal or equitable relief that this Court may deem appropriate, in an amount to be determined by the jury.

WHEREFORE, Mr. Abel prays for the following relief:

EXHIBIT A

1. Damages set forth in this Complaint, including lost wages and benefits, back pay, front pay, damages for indignity, embarrassment, humiliation, annoyance, inconvenience, emotional distress, and punitive damages in an amount to be determined by the jury;

2. All remedies afforded under the law;

3. Pre-and post-judgment interest as provided by law;

4. Attorneys' fees and costs;

5. Injunctive relief; and

6. Such other and further relief as this Court may deem just and equitable.

**PLAINTIFF DEMANDS A JURY TRIAL**

SHAWN ABEL

By Counsel

Robert P. Lorea (WVSB #7476)
***LOREA LAW OFFICE PLLC***
108 ½ Capitol Street
Suite 200
Charleston, WV 25301
Telephone: (304) 941-0529
Facsimile: (304) 344-5529
RPL@LoreaLaw.com

7

EXHIBIT A