IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

SHAWN ABEL,

          Plaintiff,

v.                                           CIVIL ACTION NO.  2:20-cv-00164

NICHE POLYMER, LLC,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is a motion to dismiss filed by Defendant Niche Polymer, LLC ("Niche Polymer"). (ECF No. 4.)   For the reasons discussed more fully herein, the motion is **GRANTED**.

### I.  BACKGROUND

Plaintiff Shawn Abel ("Abel") filed this wrongful discharge action after he was terminated from his employment with Niche Polymer.  Abel was employed with Niche Polymer from July 21, 2011, until he was discharged on February 22, 2018.  (ECF No. 1-1 at ¶ 4.)  At the time of his termination, Abel held the position of Junior Process Engineer/Supervisor in which he was responsible for training new employees and operating an extruder line.  (*Id.* ¶¶ 4–5.)  While working in this position, Abel made numerous safety-related complaints to Niche Polymer, including members of management and shift maintenance personnel.[1]  (*Id.* ¶ 6.)

---

[1] More specifically, Abel alleges that he made the following safety-related complaints:

    (a) a lack of necessary guards on cutting machinery; (b) machinery that was modified to run without a limit switch installed; (c) water leaking on to floors and causing slip and fall hazards; (d) high voltage power cords passing through wet areas; (e) the need for barricades to protect the plant's high

On February 21, 2018, Abel had been suffering from an illness, which caused him to be unable to remain at work. (*Id.* ¶ 12.) At this time, Niche Polymer accused Abel of being under the influence of drugs and ordered that he submit to a drug test. (*Id.*) Abel complied, but the test results were inconclusive. (*Id.* ¶ 14.) Thus, Abel was ordered to submit to a second drug test. (*Id.* ¶ 15.) Abel again complied and took a second test the following day. (*Id.* ¶ 16.) However, when the second test was not completed within the timeframe mandated by Niche Polymer, Abel was advised that his employment was terminated on these grounds. (*Id.*)

On February 3, 2020, Abel filed a complaint in the Circuit Court of Jackson County, West Virginia, asserting one count against Niche Polymer for retaliatory discharge in violation of a substantial public policy of West Virginia. (ECF No. 1-1.) Abel alleges that the drug test was pretext for his termination in retaliation for filing numerous safety complaints with Niche Polymer. (*Id.* at ¶ 17.) On March 4, 2020, Niche Polymer filed a notice of removal invoking this Court's jurisdiction under 28 U.S.C. § 1441. (ECF No. 1.) Subsequently, Niche Polymer filed the instant motion to dismiss on March 11, 2020. (ECF No. 4.) Plaintiff filed a timely response on March 23, 2020, (ECF No. 6), and Niche Polymer filed a timely reply on March 30, 2020, (ECF No. 7). As such, the motion is fully briefed and ripe for adjudication.

## II.     LEGAL STANDARD

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of*

---

voltage power center and/or the insufficiency of barricades that were ultimately installed around the power center; (f) damages and unstable wheels for fork trucks; (g) defective maintenance of fork trucks; (h) overflowing water tanks; (i) exposed live electrical lines; and (j) insufficient safety training.

(ECF No. 1-1 at ¶ 7).

2

*Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). To withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Ms. King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).

In evaluating the sufficiency of a complaint, the court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [the court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient

factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

### III. DISCUSSION

Retaliatory discharge in violation of public policy has evolved as an exception to West Virginia's at-will employment scheme. *See Swears v. R.M. Roach & Sons, Inc.*, 696 S.E.2d 1, 5–6 (W. Va. 2010) (citing *Wright v. Standard Ultramarine & Color Co.*, 90 S.E.2d 459 (W. Va. 1955)); *Feliciano v. 7–Eleven, Inc.*, 559 S.E.2d 713, 718 (W. Va. 2001) ("an at-will employee serves at the will and pleasure of his or her employer and can be discharged at any time, with or without cause."). The West Virginia Supreme Court of Appeals first recognized this exception in *Harless v. First Nat'l Bank*, 246 S.E.2d 270 (W. Va. 1978). The *Harless* court held that "where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee" notwithstanding the broader at-will termination rule. Syl., *id.* at 271.

To prevail on a wrongful discharge claim in contravention of a substantial public policy, an employee must establish the following elements:

> 1) That a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).
> 2) That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).
> 3) The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
> 4) The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).

*Herbert J. Thomas Mem'l Hosp. Ass'n v. Nutter*, 795 S.E.2d 530, 541 (W. Va. 2016) (citing *Feliciano*, 559 S.E.2d at 723). In this case, the parties disagree whether Abel can meet the first prong—the existence of a clear public policy.

The existence of a clear public policy in West Virginia "is a question of law, rather than a question of fact for a jury." Syl. pt. 1, *Cordle v. Gen. Hugh Mercer Corp.*, 325 S.E.2d 111, 112 (W. Va. 1984). To identify a substantial public policy, courts look "to established precepts in [the State's] constitution, legislative enactments, legislatively approved regulations, and judicial opinions." Syl. pt. 2, *Birthisel v. Tri–Cities Health Servs. Corp.*, 424 S.E.2d 606, 612 (W. Va. 1992). The West Virginia legislature "has the primary responsibility for translating public policy into law", *Collins v. AAA Homebuilders, Inc.*, 333 S.E.2d 792, 793 (W. Va. 1985), and "[t]he power to declare an employer's conduct as contrary to public policy is to be exercised with restraint." *Washington v. Union Carbide Corp.*, 870 F.2d 957, 962–63 (4th Cir. 1989). Importantly, the public policy relied upon must not only exist—it must be substantial such that it "provide[s] specific guidance to a reasonable person." Syl. pt. 2, *Birthisel*, 424 S.E.2d 607; *Feliciano*, 559 S.E.2d at 718 ("to be substantial, a public policy must not just be recognizable as such but must be so widely regarded as to be evident to employers and employees alike."). In other words, "[a]n employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations." *Birthisel*, 424 S.E.2d at 612.

Here, Niche Polymer argues that Abel has failed to identify a substantial public policy sufficient to sustain a *Harless* retaliatory discharge claim. In his complaint, Abel alleges that the Safety and Welfare of Employees Act, W. Va. Code § 21-3-1, mandates a clear public policy that

protects workplace safety. (ECF No. 1-1 ¶¶ 21–22.) Section 21-3-1 provides, in pertinent part, the following:

> Every employer shall furnish employment which shall be reasonably safe for the employees therein engaged and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render employment and the place of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees[.]

Niche Polymer contends that reference to this entire Act, rather than a specific statutory provision therein, is insufficient because there is no West Virginia public policy that protects generalized safety complaints.

In support of this assertion, Niche Polymer relies on the Fourth Circuit's decision in *Washington v. Union Carbide Corp.*, 870 F.2d 957, 958 (4th Cir. 1989). In *Washington*, the plaintiff brought a *Harless* claim alleging, among other things, that he was discharged in retaliation for filing numerous safety complaints with his employer. *Id.* at 958–59. The Fourth Circuit affirmed the district court's conclusion that West Virginia has not recognized a cause of action for retaliatory discharge of a private sector employee for reporting safety violations to his employer. *Id.* at 964; *see also Putnam v. S.W. Jack Drilling Co.*, No. 2:07-0403, 2008 WL 11379936, at *5 (S.D. W. Va. July 30, 2008) (discussing *Washington* and finding that "[s]ince that decision, no new statute or regulation has been enacted or promulgated by the West Virginia legislature that would suggest that such is no longer the case. Nor has a body of common law developed in favor of such a public policy."). Though, unlike here, the plaintiff in *Washington* failed to identify the source of the public policy supporting his claim, Abel's reference to West Virginia Code § 21-3-1 does not strengthen his claim.

In *Conrad v. Council of Senior Citizens of Gilmer Cty., Inc.*, No. 14-1262, 2016 WL 6778918 (W. Va. Nov. 16, 2016), the West Virginia Supreme Court of Appeals had the opportunity but declined to reach the issue of whether W. Va. Code § 21-3-1 constitutes a substantial public policy, actionable under *Harless*.[2]  *Id.* at *4.  However, in a concurring opinion, Justice Loughery and Justice Ketchum stated that this statute "epitomizes a generally governing law that is woefully insufficient in its proscriptions and requirements so as to represent an *actionable* substantial public policy."  *Id.* at *6 (emphasis in original).  The concurrence based this conclusion, in part, on the specificity requirement set forth in *Birthisel*, providing that "[a]n employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance . . . ."  *Id.* (citing 424 S.E.2d at 612); *see also id.* (emphasizing that "a *Harless*–based action requires more than simply raising the [spectre] of a potentially governing law." (citing *Frohnapfel v. ArcelorMittal USA LLC*, 772 S.E.2d 350, 355 (W. Va. 2015)).  Though ultimately agreeing with the majority, the authoring justice of the concurring opinion stated that, given W. Va. Code § 21-3-1 is "broad-based" and "aspirational", the majority "missed an opportunity to reiterate the specificity requirements for an actionable 'substantial public policy[.]'"  *Id.* at *7.

Since *Conrad*, the West Virginia Supreme Court of Appeals has not addressed whether W. Va. Code § 21-3-1 confers a substantial public policy protecting workplace safety.  Further, the Fourth Circuit has cautioned that the absence of prior case law from West Virginia courts recognizing a statute as a substantial public policy "constitutes a settled question of law" that must not be disturbed.  *See Tritle v. Crown Airways, Inc.*, 928 F.2d 81, 84 (4th Cir. 1990).  Thus, the Court is constrained to follow the applicable precedent and find that W. Va. Code § 21-3-1 cannot

---

[2] The *Conrad* court did not address this issue because the facts alleged did not plausibly suggest that the respondent acted contrary to the statute.

presently support a *Harless* claim. *See Washington*, 870 F.2d at 962 (explaining that federal courts are only permitted "to rule upon state law as it presently exists and not to surmise or suggest its expansion.") (citations omitted).

Abel also argues that the West Virginia Occupational Safety and Health Act ("OSHA"), W. Va. Code § 21-3A-1, confers a substantial public policy promoting workplace safety. However, this Act applies only to public employers. *See* W. Va. Code § 21-3A-4(a) ("This article applies to all public employers, public employees and public workplaces within the State of West Virginia."). The West Virginia Supreme Court of Appeals previously affirmed the dismissal of a similar claim on the basis that West Virginia's OSHA statute does not provide a substantial public policy to private sector employees. *See Gibson v. Shentel Cable Co.*, No. 12-0132, 2013 WL 500202, at *2, *6 (W. Va. Feb. 11, 2013); *see also Washington*, 870 F.2d at 963 (same). There is no allegation in the complaint that Niche Polymer is a public employer nor are there facts alleged from which the Court could infer that Niche Polymer is a public workplace. Therefore, West Virginia's OSHA statute cannot support Able's *Harless* action.

Additionally, Abel cites Chapter 15 of the federal Occupational Safety and Health Act, 29 U.S.C. § 651, *et seq.* as a basis for his *Harless* claim. In particular, the complaint references 29 U.S.C. § 651(b), which provides as follows:

> The Congress declares it to be its purpose and policy, through the exercise of its powers to regulate commerce among the several States and with foreign nations and to provide for the general welfare, to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources . . . .

(ECF No. 1-1 at ¶¶ 23–24.) Abel argues that because West Virginia's OSHA statute adopts the federal OSHA standards as the minimum safety and health standards in West Virginia, *see* W. Va. Code § 21-3A-7, the statutes should be construed together to apply equally to public employers.

Notwithstanding the fact that West Virginia's public policy is clearly in keeping with the objectives of the federal OSHA standards, there is no question that the State's OSHA statute applies only to the public sector. *See* W. Va. Code § 21-3A-4(a). Further, Niche Polymer correctly highlights that the West Virginia Supreme Court of Appeals has never recognized OSHA as a source of substantial public policy, actionable under *Harless*. Thus, following the Fourth Circuit's guidance in *Tritle*, this Court declines to expand West Virginia law by recognizing a theory of substantial public policy absent a clear statement from the West Virginia Supreme Court of Appeals.[3] *See* 928 F.2d at 84. Accordingly, like W. Va. Code § 21-3-1, neither the federal nor the State's OSHA statutes can serve as a basis for Abel's retaliatory discharge claim.

Considering Abel has not identified a substantial public policy that was implicated in this case, the Court need not address whether he has pled sufficient pled facts to satisfy the causation element of a prima facie *Harless* claim.

---

[3] The Court is mindful of OSHA's anti-retaliation provision in Section 11(c), which prohibits discrimination against an employee who reports a safety violation. *See* 29 U.S.C. § 660(c)(1). The enforcement procedures of this provision are somewhat restrictive, *id.* at § 660(c)(2), and the statute does not create a private right of action for an employee who is discharged for reporting a safety violation. *See Johnson v. Interstate Mgmt. Co., LLC*, 849 F.3d 1093, 1097 (D.C. Cir. 2017) ("Section 11(c) does not expressly grant employees a private cause of action for retaliation claims."); *Scarborough v. Aegis Comm'ns Group, Inc.*, 217 F.3d 840, at *1 (4th Cir. 2000) (unpublished table decision) (noting, "there is no private right of action under OSHA."). However, the statute does not on its face preclude an employee from instituting an action to recover damages for an alleged wrongful discharge under a tort theory. Though this anti-retaliation provision is not cited in Abel's complaint or response brief, there is a strong argument to be made in support of the recognition of a substantial public policy favoring an employee, such as Abel, who believes he was discharged for reporting safety violations to his employer. Indeed, the purpose of the statute could be frustrated if employees who were terminated for reporting violations were left without an adequate remedy. This is, at least for now, a matter that can only be addressed by the West Virginia Legislature.

## IV.    CONCLUSION

For the foregoing reasons, Niche Polymer's Motion to Dismiss, (ECF No. 4), is **GRANTED**.  The Court **DISMISSES** this case and **DIRECTS** the Clerk to remove this action from the Court's docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

        ENTER:    June 22, 2020

_____
THOMAS E. JOHNSTON, CHIEF JUDGE